# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **DONALD M. BOYSAW**, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:07CV00079 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **PURDUE PHARMA, ET AL.**, | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendants. | ) |

*Donald M. Boysaw, Pro Se; William W. Eskridge and Cameron S. Bell, Penn Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

The pro se plaintiff in this diversity action seeks damages against a pharmaceutical company and three of its executives on the ground that their product, OxyContin, caused him injury. I find that the individual defendants' motions for summary judgment on the grounds of the statute of limitations must be granted.

I

The plaintiff, Donald M. Boysaw, sought treatment for back injuries after becoming disabled in 2000.[1] Pharmacy and medical records submitted by the plaintiff indicate that he used a variety of prescription medications to combat the resulting

---

[1] The plaintiff is presently incarcerated, but some of the events described occurred before his incarceration.

pain. The plaintiff was treated by Cecil B. Knox, M.D., between April 11, 2001, and June 8, 2001, and was given numerous prescriptions, including those for OxyContin, Oxy IR, Methadone, and Kadian, all opioid analgesics.

Beginning on July 3, 2001, the plaintiff sought treatment from Alvis Perry, M.D., who increased his OxyContin prescription from three forty-milligram doses daily to eight eighty-milligram doses daily and also gave the plaintiff additional prescriptions for Oxy IR and OxyFast.[2] Dr. Perry gave the plaintiff information on how he could receive medication for free from Purdue's Individual Patient Assistance Program ("IPAP") and the plaintiff received his OxyContin prescription through the IPAP on three occasions in December 2001 and January 2002. Prescription records indicate that both before and after having his OxyContin prescription filled by the IPAP, the plaintiff had this prescription filled by a Roanoke, Virginia pharmacy. The defendants claim, and the plaintiff does not dispute, that Dr. Perry ceased treating the plaintiff after learning that he tested positive for cocaine use. Treatment records from this time period indicate that the plaintiff did test positive for cocaine metabolite on February 10, 2002, and that he was banned from the medical office after threatening the receptionist on March 12, 2002.

---

[2] There is conflict in the medical records as to whether the prescription written by Dr. Perry allowed seven or eight eighty-milligram tablets of OxyContin each day.

The plaintiff then sought treatment from a third physician, Linda Cheek, M.D., who continued to prescribe OxyContin to the plaintiff from May 2, 2002, to April 6, 2004.[3]

II

The plaintiff contends that the dosage prescribed by Dr. Perry, supplied at no cost by Purdue, was excessive and, accompanied by misbranding that downplayed the risk of abuse and addiction, led to his OxyContin addiction and the resulting injuries: monetary loss, nose bleeds and numbness, tooth loss, a dime-sized hole in his nose, and psychological and physical suffering from his addiction. Based on the allegations in the Complaint, these injuries occurred at some point between 2001 and 2004.[4]

The individual defendants, Paul Goldenheim, Michael Friedman, and Howard Udell, each move for summary judgment arguing that the plaintiff's claim is barred

---

[3] Medical records labeled "Prison Health Services" indicate that the plaintiff was incarcerated between October 2003 and January 2004 and that he received detox treatment for his OxyContin addiction while incarcerated. Pharmacy records indicate that the plaintiff did not fill his OxyContin prescription during this time, but resumed on February 5, 2004.

[4] The plaintiff includes few dates in his Complaint. However, he indicates that his addiction developed within the first three months of having his OxyContin prescription filled by IPAP and that by 2004 "all of [his] life savings were gone, and he realized that the hole in his nose had become the size of a dime and bled constantly." (Compl. ¶ 28.)

- 3 -

by Virginia's two-year statute of limitations on personal injury claims.[5] Under Virginia law, the statute of limitations begins to run on a personal injuries claim from the date that the injury is sustained, and not the date that the injury is or should have been discovered. Va. Code Ann. § 8.01-230 (2007); *Locke v. Johns-Manville Corp.*, 275 S.E.2d 900, 904-06 (Va. 1981). The term "injury" is deemed to be a "positive, physical or mental hurt to the claimant" and not a "legal wrong to him in the broad sense that his legally protected interests have been invaded." *Locke*, 275 S.E.2d at 904. It is clear from the facts in the record that any injury sustained by the plaintiff due to his OxyContin use occurred no later than 2004, more than two years prior to the filing of this action. The plaintiff argues that the statute of limitations did not begin to run until May 10, 2007, when the individual defendants, in their roles as responsible corporate officers, pled guilty to misbranding OxyContin, and when he could have reasonably known of the misbranding problems. Because the plaintiff's interpretation would have me rely on the date he discovered the wrongful act, rather

---

[5] While the allegations in the Complaint also implicate several different legal theories, the defendants point out that "every action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues." Va. Code Ann. § 8.01-243(a) (2007); *see also Adkins v. A.H. Robins Co.*, 13 Va. Cir. 461, 461-62, 469 (Va. Cir. Ct. 1977) (holding that the two-year statute of limitations for personal injury claims applied to claims that the manufacturer had negligently failed to warn the plaintiff's physician and the plaintiff of dangers associated with a prescription device). Similar to *Adkins*, the plaintiff argues that he and his physician were not adequately warned of the risks of addiction associated with OxyContin use because of the defendants' misbranding.

- 4 -

than the date of his actual injury, I reject it. The plaintiff's personal injury claims are barred by Virginia's two-year statute of limitations and so the individual defendants' motions for summary judgment will be granted.[6]

III

The plaintiff has also moved for summary judgment in his favor as to all defendants. Because summary judgment is appropriate on the individual defendants' motion on the basis of the statute of limitations, the plaintiff's motion as to those defendants will be denied.

Moreover, as to the corporate defendant, summary judgment for the plaintiff must be denied. As the moving party and the party bearing the burden of proof at trial, the plaintiff is entitled to summary judgment only if he demonstrates through his pleadings and competent evidence that there is no genuine issue as to any material fact. *Lynchburg Commc'ns Sys., Inc. v. Ohio State Cellular Phone Co.*, No. 6:03CV00107, 2006 WL 148750, at *10 (W.D. Va. Jan. 18, 2006); *see also Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (describing the "more difficult" task faced in a summary judgment proceeding by the party with the burden

---

[6] The corporate defendant has not moved for summary judgment and the present action continues as to that defendant.

of proof at trial: he "must do more than put [an] issue into genuine doubt; indeed [he] must remove genuine doubt from the issue altogether"). Despite the plaintiff's contention that the defendants' guilty pleas for the misbranding of OxyContin amount to an admission of liability in the instant action, I find that there exist genuine issues of material fact pertaining to the causation of the plaintiff's injuries. Given the extensive evidence that the plaintiff's OxyContin use was accompanied by the use of other opioid analgesics and cocaine, I cannot infer without additional proof that OxyContin was the proximate cause of the plaintiff's injuries. *See McCauley v. Purdue Pharma, L.P.*, 331 F. Supp. 2d 449, 462, 465 (W.D. Va. 2004); *Ewing v. Purdue Pharma, L.P.*, No. 2:02CV00150, 2004 WL 1856002, at *1-2 (W.D. Va. Aug. 19, 2004). For these reasons, I will deny the plaintiff's Motion for Summary Judgment.

IV

For these reasons, it is **ORDERED** as follows:

1. The plaintiff's Motion for Summary Judgment is DENIED; and

2. The Motions for Summary Judgment filed by defendants Paul Goldenheim, Michael Freedman, and Howard Udell are GRANTED and judgment is entered in their favor.

ENTER: May 16, 2008

/s/ JAMES P. JONES
Chief United States District Judge