# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **DONALD M. BOYSAW**, | ) |
| Plaintiff, | ) Case No. 1:07CV00079 |
| v. | ) **OPINION** |
| **PURDUE PHARMA, ET AL.**, | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendants. | ) |

*Donald M. Boysaw, Pro Se; William W. Eskridge and Cameron S. Bell, Penn Stuart & Eskridge, Abingdon, Virginia, for Defendant Purdue Pharma, L.P.*

In this diversity action, the plaintiff, a federal inmate proceeding pro se, seeks damages against a pharmaceutical company on the ground that its product OxyContin® ("OxyContin") caused him injury. I find that the defendant's motion for summary judgment must be granted because the plaintiff has failed to make a sufficient showing of causation, an essential element for all of his claims.

I

The plaintiff, Donald M. Boysaw, brought suit against Purdue Pharma, L.P. ("Purdue"), for negligence and failure to warn, which the plaintiff claims led to his addiction to OxyContin and related injuries. The plaintiff alleges that Purdue was negligent in administering its Individual Patient Assistance Program ("IPAP") by

allowing an entity called Express Scripts to fill his prescriptions for eight 80-milligram tablets of OxyContin per day, an amount he claims was a threat to his health and safety. The plaintiff also alleges that Purdue failed to warn his treating physician, Alvis Perry, M.D., of the true addictive quality of OxyContin. The plaintiff claims that his addiction to OxyContin became so fierce that he had to crush the tablets and inhale them through his nostrils to avoid the time-release function achieved when the medicine was taken orally as directed, which led to the formation of a hole in his nose that bleeds continuously. In addition to the negligence and failure to warn claims, the plaintiff lists causes of action under the common law and several statutes.[1] For each cause of action, the plaintiff has the burden to prove that OxyContin caused his addiction and resulting injuries.

The plaintiff moved for summary judgment against the defendant, which I denied because I could not "infer without additional proof that OxyContin was the proximate cause of the plaintiff's injuries." *Boysaw v. Purdue Pharma*, No. 1:07CV00079, 2008 WL 2076667, at *2 (W.D. Va. May 16, 2008).[2] The defendant

---

[1] These causes of action include breach of implied warranties under the Virginia Uniform Commercial Code; claims under the federal Food and Drug Act; and a claim under the Lanham Trademark Act, 15 U.S.C.A. § 1125(a) (West 1998). (Compl. 3.)

[2] In the same opinion, I granted summary judgment in favor of three individually named defendants on statute of limitations grounds. *Id.* at *1.

- 2 -

subsequently moved for summary judgment against the plaintiff. Both parties have briefed the issues, and the defendant's motion is ripe for decision.

II

The essential facts of the case, either undisputed or, where disputed, recited in the light most favorable to the nonmovant on the summary judgment record, are as follows. Beginning around April 2001, Boysaw began taking a variety of medications to combat back pain caused by lumbar facet syndrome. The earliest prescriptions for Boysaw contained in the record are from Cecil B. Knox, M.D., of Roanoke, Virginia.[3] On April 11, 2001, Dr. Knox prescribed Methadone, OxyContin, and OxyIR, all of which are opioids.[4] On May 9, 2001, Dr. Knox prescribed Methadone, OxyContin, OxyIR, and Kadian, all of which are opioids.

Around July 2001, Boysaw started to receive prescriptions from Dr. Alvis Perry. Dr. Perry advised Boysaw that he qualified as a candidate to receive his

---

[3] Boysaw states in his reply brief that "Dr. Lucas of Boxley Hill Clinic was prescribing the Plaintiff 40 milligram Oxy[C]ontin in the year 2000 as treating physician before Dr. Knox," (Addendum to Opp'n Mot. 1), and that he also took OxyContin in 1999 (*Id.* at 2), but the record does not contain those prescriptions.

[4] An "opioid" is a synthetic drug with the properties of an opiate, but not directly derived from opium. *See McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 450 n.2 (W.D. Va. 2004) (citing *Merriam Webster's Collegiate Dictionary* 815 (10th ed. 1996)). For the purposes of this opinion, "opioid" and "opiate" will be considered synonymous.

- 3 -

medication free of charge through a program run by Purdue due to his disability status and income. Purdue subsequently approved Boysaw for the IPAP program, and when Dr. Perry wrote prescriptions, those prescriptions were filled by Express Scripts, a mail-order pharmacy, and mailed to Boysaw. Dr. Perry prescribed OxyContin and OxyFast, which is also an opioid.

Boysaw filled prescriptions from Dr. Perry for OxyContin and OxyFast in July, August, September, October, and December of 2001, with the addition of a few prescriptions for non-opioid medications and one prescription for OxyIR. On February 12, 2002, Boysaw filled his last prescription for OxyFast; this was also his last prescription from Dr. Perry. On February 4, 2002, a lab test ordered by Dr. Perry found Boysaw positive for cocaine metabolite. Subsequently, Dr. Perry stopped treating Boysaw. After February 2002, Linda Cheek, M.D., prescribed only OxyContin for pain relief, and Boysaw received other non-opioid medications for unrelated maladies.

Taken together, the documents produced by Boysaw show that for the first ten months that he was taking OxyContin, from April 2001 to February 2002, he was also taking other opioid pain medications. Dr. Perry was Boysaw's treating physician when Express Scripts filled his prescriptions through Purdue's program from approximately July 2001 to February 2002, a period of about seven months. During

- 4 -

those seven months, Boysaw was taking other opioids in addition to OxyContin. The following two years, from May 2002 to April 2004, Boysaw took only OxyContin for pain.

In support of its Motion for Summary Judgment, the defendant submitted a Declaration of Michael F. Weaver, M.D. Among his long list of credentials, Dr. Weaver is an Associate Professor of Internal Medicine and Psychiatry at Virginia Commonwealth University ("VCU"), and serves as the Medical Director of the Addiction Consult Service at the VCU Medical Center. Dr. Weaver examined Boysaw's medical records from September 7, 2000, to February 21, 2002. During the time frame Dr. Weaver reviewed, Boysaw was always on OxyContin and some other opioid; it was only after February 2002 that Boysaw started to take only OxyContin for his back pain. Although Dr. Weaver states that he had access to Boysaw's medical records beginning September 7, 2000, the first recorded opioid prescribed to Boysaw was not until April 12, 2001. Therefore, Dr. Weaver reviewed only the first ten months of Boysaw's recorded opioid use: the seven months during which Dr. Perry was the treating physician, and a few months before and after this most relevant period.

Dr. Weaver states in his affidavit that it is his opinion, "given the quantities and dosages of morphine, methadone and oxycodone obtained and presumably consumed

- 5 -

by Mr. Boysaw, irrespective of the oxycodone contained in OxyContin, . . . Mr. Boysaw became physically dependent on opioids during the period in question." (Decl. of Michael F. Weaver, M.D. ¶ 26.) Dr. Weaver also concludes that Boysaw "would have become physically dependent on opioids during the time in question even if he had not also taken the OxyContin he took." (*Id.*)

Dr. Weaver could not conclude with certainty whether Boysaw was addicted to opioids by the end of those ten months, but concluded it was "likely." (*Id.* ¶ 27.) Dr. Weaver points to two factors indicating addiction.[5] First, Dr. Perry stopped treating Boysaw in February 2002 because Boysaw admitted to taking cocaine, and Boysaw threatened to damage Dr. Perry's office as a result. This behavior suggests that Boysaw was addicted to opioids by February 2002. Second, Dr. Weaver notes that Mr. Boysaw admitted to snorting OxyContin, and this abuse of the drug also suggests that he was addicted. Dr. Weaver concludes that "if [Boysaw] was in fact addicted to opioids, there is no logical, scientific or medical basis for ascribing that addiction, or the need to be detoxified, to the OxyContin he took rather than the large

---

[5] Also, although Dr. Weaver does not point this out, Boysaw's Complaint suggests that the onset date of his addiction was around October 2001. Boysaw's Complaint states, "The Plaintiff used this [IPAP] program for about three straight months [beginning July 2001] and the addiction had been so fierce and fast, the Plaintiff could not wait three days to send the prescription to Purdue Pharma to be filled." (Compl. ¶ 20.)

quantities of other opioids he was taking at about the same time as he took the OxyContin." (*Id.*)

## III

The defendant moved for summary judgment, arguing that, among other things, the plaintiff has failed to make a sufficient showing that his addiction to opioids and resulting injuries were caused by OxyContin. Summary judgment is appropriate when there is "no genuine issue as to any material fact" given the parties' burdens of proof at trial. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an

important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327. It is "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). In opposing summary judgment, the nonmoving party must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1).

Since this is a diversity case, Virginia substantive law applies to the plaintiff's claims. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). It is a settled principle of Virginia tort law that a plaintiff seeking recovery bears the burden to produce evidence showing that the defendant was the proximate cause of the injury sustained. *Blacka v. James*, 139 S.E.2d 47, 50 (Va. 1964). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beale v. Jones*, 171 S.E.2d 851, 853 (Va. 1970). Although there may well be more than one proximate cause of an injury, *Panousos v. Allen*, 425 S.E.2d 496, 499 (Va. 1993), Virginia courts follow the "but for" rule of proximate causation, under which a defendant is not liable unless the harm would not have occurred but for the defendant's act. *See Sugarland Run Homeowners Ass'n v. Halfmann*, 535 S.E.2d 469, 474 (Va. 2000).

- 8 -

The plaintiff has failed to make a sufficient showing that OxyContin[6] caused his addiction to opioids and related injuries. During the first ten recorded months that Boysaw took OxyContin, he was also taking other opioids. The defendant's expert Dr. Weaver concluded that Boysaw became physically dependent on opioids during those first ten months, and such dependency would have occurred without OxyContin and cannot be attributed to OxyContin. Dr. Weaver also concluded that it was likely that Boysaw was addicted to opioids by the end of those first ten months, and if he was addicted, there is no basis for ascribing that addiction to OxyContin rather than the other opioids he was taking during that time.

Boysaw has not produced an expert or other scientific proof to refute Dr. Weaver's conclusions. "Virginia tort law does not mandate expert testimony to show proof of causation in every case. However, in a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts." *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 464 (W.D. Va. 2004) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 (4th Cir. 1990) and *Hartwell v. Danek Med., Inc.*, 47 F. Supp. 2d 703, 707 (W.D. Va. 1999)).

---

[6] Boysaw recently tried to lump together his prescriptions for OxyContin, OxyFast, and OxyIR because they are "all the products of Purdue Pharma." (Addendum to Opp'n Mot. 2.) But Boysaw has not claimed that Purdue misled his physicians about the addictive qualities of OxyFast or OxyIR or was negligent in dispensing those medications—his complaint and all of his arguments have centered around OxyContin.

Although I am sympathetic to Boysaw's indigence and inability to pay for an expert, it is his burden to make a sufficient showing that OxyContin was the cause of his physical dependence and addiction to opioids, and he has not done so. Since causation is an essential element for each of his claims, including the negligence and failure to warn claims, summary judgment in favor of the defendant is appropriate at this time.[7]

IV

For the reasons stated, the defendant's Motion for Summary Judgment will be granted. A separate judgment will be entered.

DATED: September 30, 2008

/s/ JAMES P. JONES
Chief United States District Judge

---

[7] The deficiencies in Boysaw's evidence would not be cured by additional discovery. The evidence that is lacking is not the type that would be found within his opponent's records; rather, it is the type of information that the plaintiff would need to gather on his own. Therefore, Boysaw's Motions to Compel further discovery will be denied.